CITY OF GREENSBORO AND ROBERT H. FRAZIER, M. A. ARNOLD, WILLIAM B. BURKE, J. A. CANNON, JR., E. C. FAULCONER, WILLIAM B. HAMPTON AND BOYD R. MORRIS v. HERMAN AMASA SMITH, FOR AND ON BEHALF OF HIMSELF AND ALL OTHER CITIZENS AND TAXPAYERS OF THE CITY OF GREENSBORO, AND SUBSCRIBERS TO GREENSBORO WAR MEMORIAL FUND.

(Filed 15 January, 1954.)

**1. Constitutional Law § 8b: Municipal Corporations § 8e—**

Where the General Assembly by legislative act approves and ratifies a municipal ordinance setting forth therein the ordinance in full, the ordi-

nance is merged into the legislative act, and a war memorial commission which is created therein as a legal entity becomes a creature of the Legislature and derives all of its legal functions and powers from the statute.

**2. Same: Municipal Corporations § 43—**

Where a municipal war memorial commission as constituted by statute of the General Assembly consists of fifteen commissioners with final authority to determine and designate the location of the proposed memorial, the city council is thereafter without authority to amend such commission's charter or modify its corporate powers, and an ordinance thereafter enacted increasing the number of commissioners to seventeen is void so that subsequent acts by the seventeen man commission, including the approval of a site for the memorial, are a nullity. No site having been selected in contemplation of law, the city is without authority to disperse war memorial funds or appropriate city funds of any kind toward the construction of the memorial at the site approved by the seventeen man commission.

**3. Taxation § 5—**

While a municipal swimming pool is not a necessary expense of government within the purview of Art. VII, sec. 7, of the Constitution of North Carolina, and a tax therefor may not be levied without the approval of its voters, such a facility is a public purpose for which the municipality may expend unallocated municipal liquor store profits without a vote, Ch. 394, Session Laws 1951.

**4. Municipal Corporations § 43: Taxation § 10½—**

The fact that a municipality levies a special tax for recreational purposes with the approval of its voters does not deprive the municipality of the right to supplement such special tax funds with moneys derived from the operation of municipal liquor control stores, there being no stipulation, express or implied, in the issue submitted to the voters for the special tax that the amount spent for recreational purposes should be limited to funds raised by such special tax.

APPEAL by defendant from *Sharp, Special Judge,* at 2 November Civil Term, 1953, of GUILFORD, Greensboro Division.

Civil action under the Declaratory Judgment Act (G.S. 1-253 *et seq.*) to determine questions respecting (1) whether the City of Greensboro may appropriate funds from sources other than *ad valorem* taxes to supplement private contributions to the Greensboro War Memorial Fund and expend this fund in erecting certain memorial facilities, including a municipal auditorium, and (2) whether profits from the City's liquor control stores may be expended in constructing a public swimming pool.

Jury trial was waived by agreement of the parties and the trial court found facts, made conclusions of law, and entered judgment. These in gist are the findings of fact pertinent to decision:

1. On 4 April, 1944, the City Council of the City of Greensboro enacted an ordinance, designated as Chapter 73 of its Code, establishing the

Greensboro War Memorial Fund Commission to be composed of fifteen members; and on 2 May, 1944, the City Council appointed the members of the Commission and they met and organized.

2. The General Assembly of North Carolina, by enactment of Chapter 436, Session Laws of 1945, "approved, ratified, and validated" the aforesaid Chapter 73 of the Code of the City of Greensboro. This Act of the General Assembly, containing the same provisions and couched in the same language as the previously adopted ordinance of the City of Greensboro, in so far as material to decision, is as follows:

*"The General Assembly of North Carolina do enact:*

Section 1. That Chapter seventy-three of the City Code of the City of Greensboro enacted by the City Council of the City of Greensboro on the sixteenth day of May, one thousand nine hundred and forty-four, be and the same is hereby, in all respects, approved, ratified and validated, said Chapter seventy-three being in words and figures as follows:

## CHAPTER 73
### GREENSBORO WAR MEMORIAL FUND COMMISSION

### ARTICLE I.
#### ORDINANCE RELATING TO GREENSBORO WAR MEMORIAL FUND COMMISSION.

"Section 1. *Creation of Commission.* There is hereby created a commission to be known as Greensboro War Memorial Fund Commission.

"Sec. 2. *Members, vacancies. That said commission shall consist of fifteen members* to be appointed by the city council for a term of five years each. In the event of vacancy in the membership of the commission, the city council shall make an appointment for the unexpired term. (Italics added.)

"Sec. 3. *No authority to incur expenses, members to serve without pay.* The said commission shall not be authorized to incur on behalf of the City of Greensboro any expense without specific approval of the city council, and the members of the commission shall serve without compensation.

"Sec. 5. Eight members of said commission shall constitute a quorum for the transaction of business. No motion shall be carried except by vote of at least eight members.

### ARTICLE 2
#### MEMORIAL TO BE ESTABLISHED.

"Section 1. It is hereby determined that an auditorium is a desirable and suitable memorial to be established in the City of Greensboro to per-

petuate the memory of the men and women of Greensboro whose lives shall have been given for their country during the present war.

"The commission may, in its discretion, also include playground and recreation centers and other activities as a part of such memorial.

### ARTICLE 3.
### POWERS AND DUTIES OF THE COMMISSION.

"Section 1. The powers and duties of the commission shall be as follows:

"(a) The commission shall study the requirements of the City of Greensboro with respect to the type and kind of auditorium, playgrounds, recreation centers and other activities to be established.

"(b) The commission shall advise with and encourage the citizens of Greensboro and the friends of Greensboro who are interested in the city, and in the establishment of such memorial to said men and women of Greensboro whose lives shall have been given for their country during this war, and who desire to make donations to the City of Greensboro in order to make such memorials possible, . . .

"(c) The commission may, in its discretion, accept on behalf of City of Greensboro special gifts to be used for a specific designated purpose in connection with said memorial.

"(d) *The commission shall have full and final power and authority to determine and designate the location of such memorial, the plans for construction of such memorial, the furnishing and equipping thereof,* all within the limits of the funds paid to City of Greensboro for such purpose, together with any additional sum which may be obtained by City of Greensboro by governmental grant, supplement or otherwise, except as the city council may be restricted by law.   (Italics added.)

### ARTICLE 4
### FUNDS TO BE HELD BY CITY OF GREENSBORO.

"Section 1. Any funds, other than special gifts hereinabove provided for, donated to City of Greensboro for the purpose hereinabove set out, shall be held by City of Greensboro in a separate fund until such time as a location is selected and the remainder held until the construction of said memorial is possible and deemed advisable. . . ."

3. ". . . that on October 15, 1946 the *City Council of the City of Greensboro adopted an ordinance amending Chapter 73, Article I, Section 2, of the Code of the City of Greensboro increasing the number of members of said Commission from fifteen to seventeen;* that the said Commission has continuously existed and functioned, exercising the powers and functions conferred upon it by Chapter 73 and approved by

Chapter 436 of the Session Laws of 1945, and amendments to said ordinances made by the City Council of the City of Greensboro." (Italics added.)

4. "In the year 1944, and again in the year 1946, the Greensboro Memorial Fund Commission conducted campaigns for the solicitation of gifts of funds and property by businesses conducted in the City of Greensboro and by individual citizens to be used for the purposes and in the manner set forth in said Chapter 73 of the City Code of the City of Greensboro; that the said Commission has received subscriptions in the total amount of $893,108.85, and as of the date of the institution of this action has collected all of such subscriptions except the amount of $37,162.92."

5. "That since the organization of the Greensboro War Memorial Fund Commission a number of sites located within the corporate limits of the City of Greensboro have been considered by the City Council and by the said Commission; that the first site considered was the Van Noppen property located in the business district near the United States Post Office, on Gaston and Eugene Streets which had been theretofore acquired by the City without using any funds of the Greensboro War Memorial Fund Commission; . . . that on August 6, 1946, and on November 5, 1946 the City purchased two adjacent tracts of land in the northern residential section of the City between North Elm, Wendover, Carolina, and Northwood Streets (referred to as Wendover Street property) for the total price of $43,000, . . . and the City appropriated the purchase price from funds derived from the sale of real property by the City of Greensboro then on hand; . . . since objection was made by numerous citizens to the use of the Wendover Street property for the construction of an auditorium, on June 24, 1952 the City Council amended Chapter 73 of the City Code of the City of Greensboro" so as to take from the Commission and confer upon the City Council the power to determine and designate the type and location of the memorial to be established. The amendatory ordinance adopted by the City Council directs that Chapter 73, Article 3, Section 1 of the previous enactment be amended by striking out Subsection (d) of Section 1 and substituting in lieu thereof a new Subsection (d) to read as follows:

"(d) The Commission shall have full power and authority, after the City Council has determined and designated the type and location of the memorial to be established, to select and approve the plans for the construction of such memorial and the furnishing and equipping thereof, all within the limits of the funds paid to City of Greensboro for such purpose, together with any additional sum which may be obtained by City of Greensboro by governmental grant, supplement, or otherwise, except as the City Council may be restricted by law."

Following this, "the City Council also adopted a resolution authorizing the purchase of property located on the west side of Forbis Street, between Mebane Street and Lindsey Street, and on or near Summitt Avenue in the City of Greensboro, as a site for a part of the war memorial on which an auditorium shall be built pursuant to the provisions of Chapter 73 of the City Code; . . ."

6. "That the City of Greensboro, in the acquisition of the Forbis Street land, expended $191,056.65 from the War Memorial Commission Fund held by the City; that a controversy arose as to whether the City of Greensboro had a right to expend said amount of the War Memorial Commission Funds for the purchase of land to be used as a site for the war memorial, or any part of such memorial, and the Commission adopted a resolution requesting among other things that the City supplement the fund of the Greensboro War Memorial Fund Commission by an amount not less than $191,056.65 used by the City for the purchase of the said property; . . ."

7. "Thereafter, the City Council, by a resolution, determined that a part of the Forbis Street property would be used for general parking purposes instead of exclusive auditorium or war memorial purposes, and appropriated the cost thereof in the sum of $140,134.25 from general fund surplus from sources other than tax revenue, and transferred said amount to the War Memorial Fund; . . ."

8. On 15 June, 1953, the City Council adopted an ordinance again "amending Chapter 73 of the City Code." This amendment purports to retain in the City Council the right to designate the location of the memorial to be established, but revests in the Commission the power to determine the type of the memorial and to select and approve the plans and specifications thereof and the furnishing and equipment therefor.

9. On 15 June, 1953, "the City Council appropriated an additional sum of $10,000 available in its current surplus revenue from sources other than *ad valorem* taxes to be used to supplement the Greensboro War Memorial Fund, and indicated its intention to appropriate further sums from time to time for the same purpose; . . ."

10. On 10 August, 1953, "the Greensboro War Memorial Fund Commission adopted a resolution definitely and officially approving as a site for part of the war memorial, the property on North Forbis Street theretofore selected by the City Council, but upon the condition that the City would supplement the War Memorial Fund by the additional sum of $50,922.40 including the $10,000 appropriated by the City Council on June 15, 1953, thus restoring to the War Memorial Fund the total amount of $191,056.65 used by the City for the purchase of the Forbis Street property; . . ."

11. "Thereafter the City Council approved the resolution of the Greensboro War Memorial Fund Commission and appropriated the additional sum of $40,922.40 from current surplus revenue from sources other than *ad valorem* taxes to supplement the War Memorial Fund; . . ."

12. "That pursuant to the necessary statutory authority, an election was held on July 25th 1950, at which time there was submitted to the voters of the City of Greensboro the following question:

"Shall the City of Greensboro provide, establish, maintain and conduct a supervised recreation system for said City, and shall an annual tax be levied on each $100 of assessed valuation of taxable property within the corporate limits of the City of Greensboro for park and recreation purposes not exceeding 7c for the year 1950, not exceeding 8c for the year 1951, not exceeding 9c for the year 1952, and not exceeding 10c for the year 1953 and thereafter?";

that at said election 1896 votes were cast in favor of said proposal and 679 votes were cast against said proposal, and since that time the City of Greensboro has regularly levied and collected an *ad valorem* tax of 7c on each $100 of assessed property valuation for recreational purposes, and has maintained and still maintains a system of playgrounds and recreational areas and facilities for the use of its citizens."

13. "That as part of its recreation systems and playgrounds, the City of Greensboro, on July 7, 1952, appropriated the sum of $80,000.00 from profits derived from the operation of A B C Stores, and included the same in its budget for the fiscal year ending June 30, 1953, to be used for the construction of a swimming pool; that said amount was not expended within the said fiscal year and, on August 3, 1953, the same was carried forward in the City's budget for the fiscal year to end June 30, 1954, and at the same time an additional appropriation of $80,000.00 was made from profits derived from the operation of A B C Stores to be used for the same purpose; that the total sum of $160,000 appropriated for recreational purposes is in addition to the *ad valorem* tax of 7c on each $100 of assessed property valuation, . . .; that the sum of $160,000.00 is now available for the purpose of adding to and improving the recreation and playground system by the construction of a swimming pool."

14. That a liquor control election was held in the City of Greensboro on 5 June, 1951, at which a majority of the voters cast their ballots "For City Liquor Control Stores." Thereafter a liquor control system of stores was set up by the City, in accordance with Chapter 394, Session Laws of 1951, and has since been operated so as to yield a substantial annual profit.

15. "That pursuant to the provisions of Chapter 73 of the City Code of the City of Greensboro, the Greensboro War Memorial Fund Commission has determined that with funds now available to it, it will proceed to construct a single unit auditorium-arena type of building on the Forbis Street property to be used as a public auditorium and said action by said Commission has been approved by the City Council of the City of Greensboro; that it is the intention of the City of Greensboro and the Greensboro War Memorial Fund Commission to devote the Wendover Street property to use as a part of the City recreation and playground system and as a part of the memorial authorized by said Chapter 73 of the City Code."

16. "That the City of Greensboro now has in its custody and control and has always had the custody and control of all funds designated and known as the Greensboro War Memorial Fund; . . ."

17. That defendant is a "citizen and taxpayer of the City of Greensboro and a subscriber to the Greensboro War Memorial Fund and is sued in this action as a representative of a class."

Upon the facts found the court concluded and adjudged as follows:

"1. That the City of Greensboro had the lawful right to appropriate the sum of $10,000 on June 15, 1953, and the further sum of $40,922.40 on the 8th day of September 1953 from current available surplus revenue from sources other than *ad valorem* taxes for the purpose of supplementing the Greensboro War Memorial Fund, . . .

"2. That the City of Greensboro has the lawful right to disburse the funds of the Greensboro War Memorial Commission, including appropriations made by the City, for the purpose of paying the cost of construction of a portion of a War Memorial consisting of a single unit auditorium-arena building to be planned, designed, and approved by said Commission and the City Council, said plans to be finally approved by the City Council, and located on the site on Forbis Street selected by the City and approved by said Commission, and for the purpose of paying the cost of other parts of said Memorial and to be located on the Wendover Avenue property purchased by the City and approved by the Commission. In making contracts and expending the said Greensboro War Memorial Fund, the City of Greensboro shall comply with all of the applicable laws of North Carolina with respect to the awarding of contracts and expenditure of public funds for public purposes by municipalities.

"3. That the City of Greensboro had the lawful right to appropriate $80,000.00 in its budget for the year ending June 30, 1953, and a like amount in its budget for the year ending June 30, 1954, from profits derived from the operation of A B C Stores to be used for adding to and improving its recreation and playground system by the construction of a

swimming pool, notwithstanding the election held on June 25, 1950, in which the majority of the voters authorized the levy of a tax not exceeding ten cents on each $100.00 property valuation for recreational purposes and has a lawful right to disburse said funds for said purpose."

From the judgment entered the defendant appealed.

*Herman C. Wilson and L. P. McLendon for plaintiffs, appellees.*
*Horace R. Kornegay for defendant, appellant.*

JOHNSON, J.   This appeal does not present for decision the question whether the City Council of Greensboro by the adoption of Chapter 73 of its Code gave legal existence to the Greensboro War Memorial Fund Commission.   Whatever legal efficacy, if any, this Commission may have had in the first instance merged into the legislative act, Chapter 436, Session Laws of 1945, and upon its ratification on 8 March, 1945, the Commission as a legal entity became solely the creature of the General Assembly of North Carolina, deriving all its legal functions and powers from that body.   Thenceforth, the City Council of Greensboro was without power or authority to amend the Commission's charter or modify its corporate powers.

It necessarily follows that the ordinances of the City Council purporting to withdraw from the Commission the power to determine and designate the location of the Memorial and changing the membership of the Commission from fifteen to seventeen were and are void and ineffectual.

The plaintiffs urge that if it be conceded the City Council was without authority to take from the Commission the power to select the site or sites for the Memorial and make the selection or selections itself, even so, the question is moot since the Commission, as shown by the findings of fact, has approved the sites selected by the City Council for the location of the auditorium and the playground to be developed as a part of the proposed Memorial.   The contention is untenable for the reason that the seventeen-member Commission which approved the City Council's site selections was and is an illegally constituted body.   The legislative act set up a fifteen-member Commission and clothed it with "full and final power and authority to determine and designate the location of" the Memorial. See *Webb v. Port Commission,* 205 N.C. 663, 172 S.E. 377; *Brumley v. Baxter,* 225 N.C. 691, 36 S.E. 2d 281.   Therefore, the Commission has functioned as an illegally constituted body since 15 October, 1946, when the City Council, without authority of law, increased the membership of the Commission from fifteen to seventeen members.   It was this seventeen-member Commission that approved the Forbis Street and Wendover Street sites selected by the City Council as the locations, respectively, for the auditorium and the playground.   This action of the illegally consti-

tuted Commission is a nullity. In legal contemplation no site has been selected as required by law. Yet, the City Council and the seventeen-member Commission are about to proceed to expend the moneys contributed to the Memorial Fund, as supplemented by City appropriations, in constructing on the Forbis Street site an auditorium-arena building.

The City of Greensboro has no lawful right to disburse War Memorial Funds or appropriate City funds of any kind toward the construction of improvements on the Forbis Street site or any other site unless and until the same be selected by a legally constituted Commission as directed by Chapter 436, Session Laws of 1945. It necessarily follows that the court below erred in adjudging that the City of Greensboro has the lawful right to disburse the Greensboro War Memorial funds for the purpose of erecting the proposed auditorium-arena building on the Forbis Street site, and in improving the Wendover Street site as a playground or recreation center. It is also manifest that the court erred in adjudging that the City of Greensboro has the lawful right to appropriate the sums of $10,000 and $40,922.40, respectively, from surplus revenue for the purpose of supplementing the War Memorial funds to be used in paying the costs of the projects proposed to be located on these illegally selected sites.

We come now to consider the challenged appropriations made by the City for the construction of a swimming pool. These appropriations were made from profits derived from the City's Liquor Control Stores.

While the construction of a swimming pool as a part of a city's recreation system may not be financed as a necessary expense of government under our constitutional limitation (N. C. Const., Art. VII, Sec. 7) without a vote of the people (*Purser v. Ledbetter*, 227 N.C. 1, 40 S.E. 2d 702), nevertheless, such a facility is a public purpose (G.S. 160-155 *et seq.*) for which unallocated Liquor Store profits of the City of Greensboro ordinarily may be appropriated and expended without a vote of the people. As to this, it is noted that Chapter 394, Session Laws of 1951, under which the Liquor Control system of the City of Greensboro operates, expressly provides that the net profits derived by the City from the operation of its liquor stores may be used "in the operation of the water and sewer system of the City, for debt service, for the general fund, *or for any public purpose.*" (Italics added.) See *Purser v. Ledbetter, supra; Atkins v. City of Durham*, 210 N.C. 295, 186 S.E. 330. See also *Henderson v. Wilmington*, 191 N.C. 269, 132 S.E. 25; *Hall v. Redd*, 196 N.C. 622, 146 S.E. 583; *Nash v. City of Monroe*, 198 N.C. 306, 151 S.E. 634; *Mewborn v. City of Kinston*, 199 N.C. 72, 154 S.E. 76; *Goswick v. Durham*, 211 N.C. 687, 191 S.E. 728; *Turner v. Reidsville*, 224 N.C. 42, 29 S.E. 2d 211; *Brumley v. Baxter, supra* (225 N.C. 691).

The defendant in challenging the appropriations for the swimming pool alleges and contends that since the voters of the City had authorized the

levy and collection of an *ad valorem* tax for the purpose of maintaining and operating the City's recreation system, it had no right to supplement these special tax funds with moneys derived from the operation of liquor control stores for the purpose of improving its recreation and playground system by the construction of a swimming pool. The defendant cites and relies on the recent decision in *Rider v. Lenoir County,* 236 N.C. 620, 73 S.E. 2d 913. However, the case at hand is factually distinguishable from and is in nowise controlled by the cited case. In the *Rider case* the bond order on which the proposition submitted to the voters was based contained a stipulation to the effect that the amount of county funds required to finance the proposed hospital project would "not exceed $465,000." We treated that stipulation as a compact with the voters, limiting to $465,000 the amount of county funds which might be expended on the project, and held that the original appropriation, as expressly so limited by the bond order approved by the voters, could not be supplemented by the addition of $138,713.80 from nontax sources. In the *Rider case* the voters, in adopting the plan that expressly limited the amount of county funds to be spent on the hospital project, by clear implication voted down the right of the county to supplement the project with county funds of any kind. But nothing of the sort appears in the present case. In the issues submitted to the voters in the Greensboro City election of 25 July, 1950, respecting the special tax levy for the recreation system, there was no stipulation, express or implied, that the amount to be spent for recreation purposes should be limited to funds raised by the special tax.

We conclude, and so hold, that the court below properly upheld the appropriations of $160,000 from liquor store profits for the construction of a public swimming pool.

However, for the errors in respect to the appropriations for the erection of the Memorial facilities on sites not selected as provided by law the cause will be remanded.

Error and remanded.