JOHN V. LOVIN, Administrator of the Estate of DONALD CHARLES LOVIN, Deceased, v. THE TOWN OF HAMLET.

(Filed 13 January, 1956)

**1. Negligence § 4b—**

The attractive nuisance doctrine does not apply to a municipal recreation and amusement park; children are at least impliedly invited to visit such park and make use of its facilities.

**2. Same—**

It is not negligence for a person to maintain an unenclosed pool or pond on his premises.

**3. Same—**

Liability under the doctrine of attractive nuisance is usually predicated upon proof that children were in fact attracted by the instrumentality or condition which caused injury or death, and that children had been attracted to such instrumentality or condition to such an extent and over such a period of time that any person of ordinary prudence would have foreseen that injury or death was likely to result.

**4. Same—Complaint held insufficient to state cause of action for wrongful death upon doctrine of attractive nuisance.**

The allegations were to the effect that defendant municipality maintained a public playground or park and an artificial lake, that the top of the dam of the lake was a part of the park, that the water at the dam was some eight feet deep, and that plaintiff's intestate, a child seven years old, while playing in said park and on said dam, fell into the deep water of the lake and was drowned. There was further allegation that children of tender years frequented the playground and used the swings, slides and wading pools to such an extent that the agents and officials of the municipality knew, or by the exercise of due diligence should have known, that said area was dangerous to such children, and that notwithstanding such knowledge, the municipality failed to provide any type of barrier on the dam to restrain children from getting into the deep water of the lake at the dam. *Held:* Demurrer should have been sustained for want of allegation as to where, how or under what conditions plaintiff's intestate fell into the lake and for want of allegation that children were accustomed to wade in the lake or play in the lake from the banks or dam thereof in such manner and to such extent as to put the agents and officials of the municipality on notice.

**5. Municipal Corporations § 12—**

Governmental function and liability for negligence are diametrically opposed unless liability for negligence is expressly provided by statute. Whether the maintenance of a park and playground is a governmental function of a municipality, *quaere?*

**6. Pleadings § 23—**

Where judgment overruling a demurrer is reversed on appeal, plaintiff may seek leave to amend if he is so advised.

HIGGINS, J., took no part in the decision or consideration of this case.

APPEAL by defendant from *Gwyn, J.,* June Term, 1955, RICHMOND. Reversed.

Civil action to recover damages for the wrongful death of plaintiff's intestate.

In 1935 the defendant built an earth dam parallel to and about 125 feet northeast of East Hamlet Avenue (U. S. Highway 74) and impounded water sufficient to create a lake of approximately fifty acres in area, located in a densely populated section of defendant municipality. It does not appear whether the dam was built across a natural stream or the water is furnished by the local water works. In 1952 and 1953, the defendant improved the land lying between East Hamlet Avenue and the lake dam by planting trees, sowing grass, constructing a shallow wading pool, and installing swings and slides for the youth of the city as a public playground or park. The playground was so constructed that the land slopes gradually downward from the lake dam to the avenue, and the top of the dam is a part of the playground. There is a spillway in the dam through which the surplus water of the lake flows across the intervening space through a culvert under East Hamlet Avenue, and the water about the spillway is approximately eight feet deep.

After making formal allegation of the foregoing facts, the plaintiff alleges with some elaboration that the construction of said park on said area between the pond and East Hamlet Avenue, the installation of slides, swings, and the wading pool for children, and the maintenance of said area between the dam and the avenue constitutes an attractive nuisance; and that such area was frequented by children living or visiting in the immediate neighborhood of said park. He further alleges that children of tender years visited the playground and used the swings, slides, and wading pool to such an extent that the agents and officials of the defendant town knew, or by the exercise of due diligence should have known that said area was dangerous to such children, and notwithstanding such knowledge, defendant failed to provide "any type of barrier on said dam to restrain the children, which they had attracted

to said playground, from getting into the deep water of said Lake at said dam." Plaintiff then alleges that on 8 July 1954, about 3:00 p.m., plaintiff's intestate, about the age of seven years, accompanied by one Jerry Larne Norton, about five years of age, "was playing in said park and on said dam which is a part of said park, and fell in the deep water of said Lake, was drowned and was found later on in the afternoon in water approximately 8 feet deep, and the death of plaintiff's intestate, as the plaintiff is informed, believes, and hereby alleges, was proximately caused by the negligence of the defendant in the construction, maintenance, and operation of said artificial lake and the children's playground lying adjacent thereto . . .," "that the construction, maintenance and operation of said playground for children and the dam which impounded said artificial Lake, which said dam was a part of said playground, constitutes and on July 8, 1954, did constitute an attractive nuisance for children of tender age, and in the construction, operation, and maintenance of said children's playground lying between a well-traveled street and said artificial Lake, the said defendant, through its agents, servants, employees and officials, was negligent in the following particulars, to-wit:

"That said defendant, through its agents . . . and officials knew, or by the exercise of due diligence should have known, that the construction of an artificial lake . . . in a densely populated residential section, and by a street would be attractive to children, and thereby created a hazard to the life and well-being of said children, and that the existence of said artificial lake in said residential section and adjoining one of the main streets in said Town would obviously be of extreme danger to children of tender years; that the agents . . . and officials of the defendant either knew, or by the exercise of due diligence, should have known that the planting of trees and grass and the installation of slides and swings for children and a wading pool in said area between East Hamlet Avenue and the Hamlet City Lake, which includes the dam of said Lake would attract children of tender age, and that children would frequently visit said area or playground for the purpose of entertainment and amusement and for playing with each other and for the purpose of enjoying the swings, slides and wading pool so negligently installed by the defendant at and on such a dangerous place for children;" that such agents and officials "knew, or by the exercise of due diligence should have known, that after said playground for children as hereinbefore described was established by said Town, that children of tender age would visit or frequent said dangerous area or playground, and that said agents, servants, employees and officials knew, or by the exercise of due diligence should have known that the natural curiosity of children would lead them into the deep water of said Lake at said

dam and thereby cause said children to be drowned;" that said agents and officials "negligently failed to erect any type of barrier on said dam to restrain the children, which they had attracted to said playground, from getting into the deep water of said Lake at said dam;" and "failed to employ any person or persons to stay at said playground and act as a guard or keeper to protect said children of tender age and keep them from getting into the deep water on the edge of said playground;" and "failed to put up any sign of any type whatsoever warning children or their parents of the extreme danger of deep water lying adjacent to said playground for children."

The plaintiff further elaborates on his allegations of negligence in respect to the construction and maintenance of said park and the maintenance of said dam as a part of said playground. He likewise alleges that the alleged negligence of the defendant and its agents and officials was the proximate cause of the death of plaintiff's intestate.

The defendant demurred for that (1) it appears on the face of the complaint that the construction and maintenance of said park was in furtherance of a governmental function, and (2) that the complaint fails to set forth facts sufficient to constitute a cause of action.

The demurrer was overruled and defendant excepted and appealed.

*Pittman & Webb for plaintiff appellee.*
*Z. V. Morgan for defendant appellant.*

BARNHILL, C. J. In considering the complaint to determine whether it states a cause of action, a distinction must be drawn between the construction and maintenance of the park as such and the construction and maintenance of the lake. The attractive nuisance doctrine has no application to the maintenance of the park. It is maintained for the amusement, entertainment, and recreation of children of the defendant town, and such children are at least impliedly invited to visit the park and to make use of the swings, slides, wading pool and playground. Furthermore, there is no allegation that plaintiff's intestate lost his life through the use of any of the instrumentalities constructed and maintained for the entertainment of children.

A person has the right to maintain an unenclosed pond or pool on his premises. It is not an act of negligence to do so. *Hedgepath v. Durham,* 223 N.C. 822, 28 S.E. 2d 503; *Barlow v. Gurney,* 224 N.C. 223, 29 S.E. 2d 681, and cases cited; *Fitch v. Selwyn Village,* 234 N.C. 632, 68 S.E. 2d 255; *Stribbling v. Lamm,* 239 N.C. 529, 80 S.E. 2d 270.

The case in which the attractive nuisance doctrine was formulated and applied involved a turntable. *R. R. v. Stout,* 84 U.S. 657, 21 L. Ed. 745. Hence the cases dealing with attractive nuisances have come to

be known as the turntable cases. Ordinarily liability under this doctrine, which was adopted for the protection of infants of tender years, is established by proof that children were in fact attracted by the instrumentality or condition which caused injury or death and that such children had been attracted to such instrumentality or condition to such an extent and over such a period of time that any person of ordinary prudence would have foreseen that injury or death was likely to result. *Barlow v. Gurney, supra.*

When the complaint is considered in the light of the principles enunciated in the turntable cases, it is singularly defective in two respects: (1) There is no allegation as to where, how, or under what conditions plaintiff's intestate fell into the lake. Certainly he did not wade in water eight feet deep. His body must have been drawn to the place where it was located by the suction of the water flowing through the spillway. (2) While the plaintiff alleges with some elaboration that (a) the agents and officials of the defendant knew, or by the exercise of ordinary care should have known, that the natural curiosity of children would lead them into the deep water of said lake at said dam and thereby cause said children to be drowned, and (b) said children would be hurt or drowned by falling into or wading into the deep water of the lake, there is no supporting allegation of fact that children were accustomed to wade in the lake or to play in the lake from the banks thereof or to play along the water's edge in such manner and to such extent as to put the agents and officials of defendant on notice.

As the complaint may merely constitute a defective statement of a good cause of action, we refrain from any further discussion thereof which might tend to chart the course of the trial in the event the plaintiff should elect to amend.

While plaintiff, relying on *Atkins v. Durham,* 210 N.C. 295, 186 S.E. 330, and *White v. Charlotte,* 211 N.C. 186, 189 S.E. 492, conceded that the maintenance of the park was a governmental function, he was apparently inadvertent to our decision in *Purser v. Ledbetter,* 227 N.C. 1, 40 S.E. 2d 702. See also Anno. 142 A.L.R. 1340.

What was said by *Connor, J.,* in *White v. Charlotte, supra,* is *obiter dictum.* Governmental function and liability for negligence are diametrically opposed unless liability for negligence is expressly provided by statute.

It appears, therefore, that we have one case, *Atkins v. Durham, supra,* in which it is held that the maintenance of a park and playground is a governmental function and another case, *Purser v. Ledbetter, supra,* in which it is held that the maintenance of such playground or park is not a governmental function. We need not now determine which decision will be followed. We are content to rest our decision at this time solely

on the deficiency of the allegations contained in the complaint. The question of governmental immunity will be answered when it is squarely presented for decision.

The plaintiff may seek leave to amend if he is so advised. *Teague v. Oil Co.*, 232 N.C. 469, 61 S.E. 2d 345.

The judgment entered in the court below is

Reversed.

HIGGINS, J., took no part in the consideration or decision of this case.