JOSEPH C. GLENN, by His Next Friend, MRS. NORA G. GLENN, v. THE CITY OF RALEIGH, NORTH CAROLINA, a Municipal Corporation.

(Filed 28 June, 1957.)

**1. Municipal Corporations § 14i—**

Evidence tending to show that a municipal employee was using an old and powerful rotary-blade mower on rocky ground in cutting grass in a park operated and maintained by the municipality, that the mower had no guards and had been throwing rock for such length of time that the municipality had actual or constructive knowledge of the danger, and that the mower threw a rock which hit an invitee of the park, *is held* sufficient to be submitted to the jury on the issue of negligence.

**2. Same—**

A resident of a municipality is at least impliedly invited to visit a public park and use recreational facilities therein maintained by the municipality for the benefit of its citizens.

**3. Municipal Corporations § 12—**

A municipality is immune to suit for negligence in the performance of a governmental function of the municipality, but is liable for negligence in fulfilling a function of a proprietary character.

**4. Trial § 22b—**

On motion to nonsuit, plaintiff's evidence must be considered in the light most favorable to him, and defendant's evidence which tends to establish another or different state of facts or which tends to impeach or contradict plaintiff's evidence must be disregarded.

**5. Municipal Corporations §§ 12, 14i—Plaintiff's evidence held not to warrant nonsuit on ground of governmental immunity.**

Plaintiff's evidence tended to show that he was injured while an invitee in a municipal park by the negligence of an employee of the city, and that the municipality received charges and fees for the use of recreational

facilities of the park for the year in question, resulting in net revenues which were used by the city for capital maintenance of the park, salaries, expenses, etc. Defendant municipality moved for nonsuit on the ground of governmental immunity. *Held:* Plaintiff's evidence was sufficient to import a corporate benefit or pecuniary profit or advantage to the municipality so as to exclude the application of governmental immunity, and nonsuit was properly denied, defendant's evidence at variance therewith or in contradiction thereof not being considered upon the motion to nonsuit.

**6. Negligence § 20—**

An instruction of the court defining negligence and proximate cause in general terms in giving the contentions of the parties in detail, but failing to instruct the jury what facts were necessary to be found by them from the evidence to warrant an affirmative finding on the issue of negligence, must be held for prejudicial error.

**7. Trial § 31b—**

It is the duty of the trial court to declare and explain the law arising on the evidence as to all substantial features of the case, G.S. 1-180, and a mere declaration of the law in general terms and a statement of the contentions of the parties is insufficient.

DENNY, J., concurring in result.

APPEAL by defendant from *Seawell, J.,* First October Civil Term 1956 of WAKE.

Civil action to recover damages for personal injuries.

The essential allegations of the complaint are these: Plaintiff is a 17 year old boy, resident in Raleigh, and on 14 May 1953 was a junior in a High School in that city, which is a municipal corporation. That for a long period of time prior to 14 May 1953, and on that day, the city of Raleigh maintained, managed, controlled and operated for profit a public recreation ground known as Pullen Park. That about 4:00 o'clock p.m. on 14 May 1953, plaintiff and some of his schoolmates as invitees of the city of Raleigh went to Pullen Park to have a picnic supper. That while he and some of his schoolmates were sitting at a table provided by the city for public use in the Park, he was struck violently on his head by a rock about 3 inches in diameter thrown from a large grass or lawn mower of the defendant negligently operated by an employee of the city. That the grass mower was defective and dangerous. That plaintiff's skull was fractured, and he sustained severe permanent injuries.

Defendant's answer denies the complaint's allegations of negligence, and while admitting that it maintains Pullen Park as a public recreational ground for the use of its citizens, denied that the Park was operated for profit.

Plaintiff's evidence showed these facts: About 4:00 p.m. o'clock on 14 May 1953 plaintiff and five of his High School classmates went

to Pullen Park to prepare a wiener roast or picnic for a group of 30 or 40 of their classmates. Having completed their preparations for the wiener roast, and while waiting for their other classmates to arrive, these six students were seated at a table about 6 feet long and about waist high, provided by the city. This table was in front and east of a shed or cabin and some distance west of a pavilion. At this time Walter Lucas, an employee of the city, was operating a 24-inch blade Whirlwind mower, rotary blade, Toro make, 8 horse power motor, with no guard on the front of it. He was cutting grass in a very rocky area some 50 to 60 feet from where plaintiff and his classmates were seated at the table. No other persons were in the area. Suddenly "a whizzing sound" came from the direction of the mower, which whizzing sound went straight down the middle of the table between the students seated on its sides, and then there was the sound of an impact as a rock struck plaintiff's head and fell to the ground. Plaintiff threw his hands to his forehead, and bleeding profusely was carried to a hospital. Christine Owens, who was seated at the table, picked up the rock, which weighs 6½ ounces, and was offered in evidence.

The mower was an old model mower, "that must have been purchased in 1942 or 1943." From 1950 on the mower had had no guard on the front, if it had ever had one. Since 1946 the Whirlwind rotary mowers have had guards, front and rear and on the sides. The revolutions per minute of this type mower are from 1800 to 3600.

J. D. Hinsley was Superintendent of Park Maintenance for the city of Raleigh from 8 August 1950 to August 1956. He was a witness for plaintiff, and testified on cross-examination: "I have seen them (rocks) go out from under mowers in any direction thousands of times; how the rocks got out from under there I couldn't say whether from on top of the blade or underneath it, or whether knocked out from under it there or how, but I have seen them hit the ground and go as far as 150 feet. I have seen a rock propelled up in the air only a short distance, I would say maybe 50 feet before it hit the ground, just pop up and back down. I have seen them travel a greater distance than that on the ground. Q. You mean from this particular mower? A. Yes, sir,— well, I don't know particularly about that one, never paid any particular attention to where it was throwing them, but in similar makes in my everyday work with them I have seen many go from all types of machines."

W. H. Carper, city manager of the city of Raleigh, testified, as a witness for plaintiff, that the net revenue to the city of Raleigh from Pullen Park for the fiscal year 1 July 1952 to 30 June 1953 was $18,531.14. On cross-examination Carper testified in substance as follows in the absence of the jury—the defendant made no objection to the jury not hearing the testimony—: During the year ending 30 June

1953 the city of Raleigh had two major parks: Pullen Park and Chavis Park. The net receipts from Chavis Park for the fiscal year 1 July 1952 to 30 June 1953 was $4,117.85. During this period the maintenance cost to the city of Raleigh of all its parks was $90,024.95, and the cost of the recreation program was $68,223.00. The maintenance fund came from the general fund revenue, and the recreational appropriation came from revenue other than *ad valorem* taxes. The net revenue from Pullen and Chavis Parks was used for capital maintenance of the park areas, building items, paying salaries, buying fuel, etc.

During the presentation of the defendant's evidence, the city introduced a considerable volume of evidence in the absence of the jury bearing upon whether or not there is governmental immunity for the defendant in this case. The city made no objection to the jury not hearing it. A great part of this evidence is devoted to the benefits and advantages of recreational facilities and parks. This evidence in respect to the financial operation for the fiscal year 1952-1953 of Pullen Park is as follows: During the fiscal year 1952-1953 the city of Raleigh spent for the maintenance of all its parks $90,024.95, and from this amount $25,125.01 was spent for that purpose on Pullen Park. During the same period the city spent for recreation $68,223.00, and of that amount $18,870.95 was spent for that purpose in Pullen Park. The receipts during that period for all activities in Pullen Park for which charges were made amounted to $18,531.14. These receipts were expended "for upkeep, repairs, installation of new fixtures in the park amusement section, repairs to the particular activities that went into the receipts in what is called the amusement park, the swimming pool, the rides." No part of the receipts was spent in that part of the park not embraced in the amusement area. There was a park maintenance fund for that. The amusement area contains the train, the merry-go-round and the swimming pool: they were the only things in Pullen Park for which a charge was made. Adjacent to the amusement area is the picnic area. No charge is made by the city for the use of the picnic area and the cabin. Pullen Park has 42 acres.

Upon issues submitted the jury found that plaintiff was injured by the negligence of the defendant as alleged, and awarded damages in the amount of $32,500.00.

From judgment on the verdict defendant appeals.

*Paul F. Smith for Defendant, Appellant.*
*Douglass & McMillan for Plaintiff, Appellee.*

PARKER, J. The defendant assigns as error the failure of the court to allow its motion for judgment of nonsuit renewed at the close of all the evidence.

The defendant contends that plaintiff should have been nonsuited for the reason that he had not made out a case of actionable negligence against it, but if he has, it, as a municipal corporation, is immune to suit for negligence in the performance of a governmental duty in the operation and maintenance of Pullen Park.

Defendant's contention that plaintiff has not made out a case against it of actionable negligence need not detain us. Considering plaintiff's evidence in the light most favorable to him, it appears that defendant's employee on the afternoon of 14 May 1953 was operating on very rocky ground in Pullen Park defendant's old, powerful 24-inch blade Whirlwind mower, dangerous because it had no guard in front, and which, when in operation on such ground, had been throwing rocks from it for some distance, that the defendant had actual knowledge of such facts, or, if not, these facts had existed for a sufficiently long time for it in the exercise of due care to have had knowledge of them, that the defendant should have reasonably foreseen that some injury would likely follow from the operation of this Whirlwind mower to a person using the Park, and that a rock thrown by such mower proximately caused plaintiff's injuries.

Plaintiff was at least impliedly invited to visit Pullen Park and make use of its facilities. *Lovin v. Hamlet,* 243 N.C. 399, 90 S.E. 2d 760. This Court said in *Brigman v. Construction Co.,* 192 N.C. 791, 136 S.E. 125, "if a person enters upon the premises of another by reason of express or implied invitation, the owner is bound to exercise ordinary care for his safety." Plaintiff's evidence makes out a case of negligence.

The rule that a municipal corporation is immune to suit for negligence in the performance of a *governmental* function of the municipality, but is liable if it is fulfilling a function of a *proprietary* character is well settled in this jurisdiction. *Hamilton v. Hamlet,* 238 N.C. 741, 78 S.E. 2d 770; *Rhodes v. City of Asheville,* 230 N.C. 134, 52 S.E. 2d 371; *Millar v. Wilson,* 222 N.C. 340, 23 S.E. 2d 42; *Hodges v. City of Charlotte,* 214 N.C. 737, 200 S.E. 889; *Lowe v. City of Gastonia,* 211 N.C. 564, 191 S.E. 7; *Fisher v. City of New Bern,* 140 N.C. 506, 53 S.E. 342; *Moffitt v. City of Asheville,* 103 N.C. 237, 9 S.E. 695.

In *Moffitt v. City of Asheville, supra,* this Court said:

"The liability of cities and towns for the negligence of their officers or agents, depends upon the nature of the power that the corporation is exercising, when the damage complained of is sustained. A town acts in the dual capacity of an *imperium in imperio,* exercising governmental duties, and of a private corporation enjoying powers and privileges conferred for its own benefit. When such municipal corporations are acting (within the purview of their authority) in their ministerial or corporate character in the man-

agement of property for their own benefit, or in the exercise of powers, assumed voluntarily for their own advantage, they are impliedly liable for damage caused by the negligence of officers or agents, subject to their control, although they may be engaged in some work that will inure to the general benefit of the municipality. (Citing cases). The grading of streets, the cleansing of sewers and keeping in safe condition wharfs, from which the corporation derives a profit, are corporate duties. (Citing cases). On the other hand, where a city or town in exercising the judicial, discretionary or legislative authority, conferred by its charter, or is discharging a duty, imposed solely for the benefit of the public, it incurs no liability for the negligence of its officers, though acting under color of office, unless some statute (expressly or by necessary implication) subjects the corporation to pecuniary responsibility for such negligence. (Citing cases)."

The late cases, as the earlier ones, present conflicting decisions as to the question whether a municipal corporation in the maintenance of parks as places of recreation and resort for the people is discharging a governmental duty or a proprietary duty. The view taken in probably a majority of the jurisdictions in this country is that a municipality in maintaining a public park is engaged in a governmental duty, and therefore in the absence of a statute imposing liability, except in certain instances set forth in 39 Am. Jur., Parks, Squares, and Playgrounds, Sec. 37 et seq., is not liable for injuries resulting from the negligence of its employees. Other jurisdictions are committed to the view that a municipality must exercise ordinary care in maintaining its public parks to make them reasonably safe for persons frequenting and using them, and that it is subject to liability for injuries resulting from its failure to do so, which decisions are based for the most part, but not in every instance, upon the theory that it maintains its parks in a proprietary capacity. The very numerous cases are cited in Anno.: 29 A.L.R. 863 et seq.; 42 A.L.R. 263 et seq.; 99 A.L.R. 687 et seq.; 142 A.L.R. 1342 et seq.; 42 A.L.R. 2d 947; 39 Am. Jur., Parks, Squares, and Playgrounds, Sec. 35; McQuillin's Municipal Corporations, 3rd Ed., Vol. 18, Sec. 53.112; 63 C.J.S., Municipal Corporations, Sec. 907(b) and (c).

The Courts of different states have taken varying views of the effect of a municipality conducting its parks in such a manner as to derive revenue therefrom in considering the question as to whether the municipality was acting in a governmental or proprietary capacity. Anno.: 29 A.L.R. 874-875; 42 A.L.R. 265; 99 A.L.R. 694-696; 142 A.L.R. 1370-1372; 39 Am. Jur., Parks, Squares and Playgrounds, Sec. 37; McQuil-

lin's Municipal Corporations, 3rd Ed., Vol. 18, pp. 451-452; 63 C.J.S., Municipal Corporations, p. 318.

In *Carta v. City of Norwalk,* 108 Conn. 697, 145 A. 158, the city received a $2,500.00 rental for the lease of a bathing beach, the city lessor reserved the right to inspect the premises at all times. This rental was held *prima facie* to import such corporate benefit or pecuniary profit as to exclude city from rule granting it immunity from liability for its negligence, and to render erroneous direction of nonsuit in action for negligent injuries resulting in death. The Court said:

> "However, if property is not held and used by the city for municipal purposes exclusively, but in considerable part as a source of revenue, the city is responsible, as a private owner would be, for injury sustained through its negligence. *Hourigan v. Norwich,* 77 Conn. 358, 365, 59 A. 487; *Oliver v. Worcester,* 102 Mass. 489, 502, 3 Am. Rep. 485; *Chafor v. Long Beach,* 174 Cal. 478, 163 P. 670, L.R.A. 1917E, 685, Ann. Cas. 1918D, 106; 6 McQuillin on Municipal Corporations, p. 5512. . . . In the present case the amount of annual rental accruing to the city ($2,500) is such as to remove it, at least *prima facie,* from the category of such incidental income, and to import such a 'special corporate benefit or pecuniary profit' as to exclude the application of the rule of governmental immunity. It may be that a further development of facts may alter the situation, but the plaintiff's evidence and the required inferences therefrom were sufficient to protect him from a nonsuit on this ground."

See, also, *De Capua v. City of New Haven,* 126 Conn. 558, 13 A. 2d 581; *Tierney v. Correia,* 120 Conn. 140, 180 A. 282.

We have examined the record and briefs in *Lowe v. City of Gastonia, supra,* in the Clerk's Office. The complaint alleges, "the defendant, city of Gastonia, maintained and operated in its corporate capacity, the said Golf Course as a business for profit, charging patrons thereon a fee for playing golf on said course." The city clerk was a witness for plaintiff, and testified in substance: The Golf Course was a part of the Recreational System of the city of Gastonia. It was operated by Neely Price for the city. The city did not make any money off the Golf Course, but lost money every year. Plaintiff's evidence further showed fees were charged to all who played, except caddies. Plaintiff, when injured, was on the Golf Course as a caddy. Defendant in its answer admitted that it owned the Golf Course, but denied that it operated it as a business for profit. Defendant contended in its brief that plaintiff should have been nonsuited on the ground that there was no evidence of negligence on its part, but if there was, plaintiff was guilty of contributory negligence as a matter of law, and further, that if these contentions

were untenable, then it was operating the Golf Course as a governmental function, and is immune from suit. Issues of negligence, contributory negligence and damages were submitted to the jury, and answered in plaintiff's favor. In upholding the trial this Court said: "Defendant's contention on its appeal to this Court that it is not liable to the plaintiff in the action because it owned and maintained the Golf Course in the exercise of a governmental function, cannot be sustained."

This Court said in *Broome v. Charlotte,* 208 N.C. 729, 182 S.E. 325: "When a municipal corporation is acting in its ministerial or corporate character in the management of property for its own benefit, it may become liable for damages caused by the negligence of its agents subject to its control."

*Bolster v. Lawrence,* 225 Mass. 387, 114 N.E. 722, L.R.A. 1917B 1285, points out the test, with plenary citation of authority, which is generally applied respecting liability in tort against municipalities. The Court very tersely said: "The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability, if it is not, there may be liability."

In 39 Am. Jur., Parks, Squares, and Playgrounds, sec. 37, it is said: ". . . the rule in many jurisdictions is that if a municipality conducts its parks in such a manner as to derive revenue therefrom, it acts in a proprietary capacity and will be held liable for injuries resulting from defective or dangerous conditions which are allowed to exist. In order to deprive a municipal corporation of the benefit of governmental immunity, however, the act or function must involve special corporate benefit or pecuniary profit inuring to the municipality."

In *Hannon v. Waterbury,* 106 Conn. 13, 136 A. 876, 57 A.L.R. 402, it was held that the maintenance of a swimming pool and locker rooms in high school was a governmental function of the city, so as to render it immune from liability for injury, though a small charge was made for use of pool partially covering expense of maintenance. See *Burton v. Salt Lake City,* 69 Utah 186, 253 P. 443, 51 A.L.R. 364, where it was held that the city, in maintaining under statutory authority a bath house and swimming pool for the use of which admission is charged, acts in its private capacity, and is liable for injuries caused by their negligent operation.

In *Pickett v. City of Jacksonville,* 155 Fla. 439, 20 So. 2d 484, the city owned and operated a pool for swimming in Springfield Park, and charged a fee for the use thereof. Plaintiff's 12 year old son paid the city to use the pool, put on his bathing suit, and entered the pool. The declaration alleged he drowned due to the city's negligent failure to provide a sufficient number of attendants and to make reasonable use of

safety equipment. The Court reversed the sustaining of a demurrer to the declaration.

We are advertent to G.S. 160-156, which is a declaration of State Public Policy as to adequate recreational programs and facilities, and to G.S. 160-163 entitled Petition for establishment of system and levy of tax. We are also advertent to *Purser v. Ledbetter,* 227 N.C. 1, 40 S.E. 2d 702; *Greensboro v. Smith,* 239 N.C. 138, 79 S.E. 2d 486; *Greensboro v. Smith,* 241 N.C. 363, 85 S.E. 2d 292; *Lovin v. Hamlet, supra; Atkins v. Durham,* 210 N.C. 295, 186 S.E. 330. We are also advertent to *James v. Charlotte,* 183 N.C. 630, 112 S.E. 423, where it was held that the city charging the actual expense of removing garbage did not change its act from a governmental function to a proprietary function. We are further advertent to our decisions that where a municipality enters the business of selling light and power to its citizens for profit, it is not regarded as being in the exercise of governmental functions, and under proper circumstances may be held to civil liability for its torts. *Munick v. Durham,* 181 N.C. 188, 106 S.E. 665; *Harrington v. Wadesboro,* 153 N.C. 437, 69 S.E. 399; *Fisher v. New Bern, supra.*

Considering plaintiff's evidence in the light most favorable to him, and disregarding defendant's evidence which tends to establish another and a different state of facts, or which tends to impeach or contradict his evidence, which we are required to do on the motion for judgment of nonsuit (*Atkins v. Transportation Co.,* 224 N.C. 688, 32 S.E. 2d 209; *Singletary v. Nixon,* 239 N.C. 634, 80 S.E. 2d 676), it is our opinion that the net revenue of $18,531.14 for the fiscal year 1 July 1952 to 30 June 1953 received by the city of Raleigh from the operation of Pullen Park for that period, which was used by the city for the capital maintenance of the park area, building items, paying salaries, buying fuel, etc., (the evidence that the $18,531.14 was spent in the amusement area only is the defendant's evidence), was such as to remove it, for the purposes of the consideration of a motion for judgment of nonsuit, from the category of incidental income, and to import such a corporate benefit or pecuniary profit or pecuniary advantage to the city of Raleigh as to exclude the application of governmental immunity. The required inferences from plaintiff's evidence as set forth in the Record are sufficient to protect him from a nonsuit on this ground.

However, the case must be tried anew because of a fatal error in the charge. The defendant's assignments of error Nos. 30 and 31 are to the effect that, while the court in instructing the jury on the first issue of negligence stated in general terms negligence and proximate cause, it failed and neglected to tell the jury what facts, if found by them, would constitute actionable negligence on defendant's part, and left the jury unaided to apply the law to the facts relating to this issue.

A reading of the charge shows that in respect to the first issue the court elaborately defined negligence and proximate cause in general terms, and in detail stated the contention of the parties, but that it is indisputably clear that the Trial Judge failed to declare and explain the law upon the evidence given in the case. Nowhere in the charge did he instruct the jury what facts it was necessary for them to find to constitute negligence on the part of the defendant. Nowhere in the charge did the Trial Judge instruct the jury as to the circumstances under which the first issue should be answered in the affirmative, and under what circumstances it should be answered in the negative.

The provisions of G.S. 1-180 require that the Trial Judge in his charge to the jury "shall declare and explain the law arising on the evidence in the case," and unless this mandatory provision of the statute is observed, "there can be no assurance that the verdict represents a finding by the jury under the law and on the evidence presented." *Smith v. Kappas,* 219 N.C. 850, 15 S.E. 2d 375.

The chief purpose of a charge is to aid the jury to understand clearly the case, and to arrive at a correct verdict. For this reason, this Court has consistently ruled that G.S. 1-180 imposes upon the Trial Judge the positive duty of declaring and explaining the law arising on the evidence as to all the substantial features of the case. A mere declaration of the law in general terms and a statement of the contentions of the parties, as here, is not sufficient to meet the statutory requirement. *Hawkins v. Simpson,* 237 N.C. 155, 74 S.E. 2d 331, where 14 of our cases are cited. In *Lewis v. Watson,* 229 N.C. 20, 47 S.E. 2d 484, this Court said, quoting from Am. Jur.: "The statute requires the judge 'to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relations of the particular evidence adduced to the particular issues involved.' 53 Am. Jur., Trial, section 509."

New trial.

DENNY, J., concurring in result: I have come to the conclusion that in view of our decisions which hold that a municipality may be held liable for its acts of negligence in connection with the construction and maintenance of a golf course, *Lowe v. Gastonia,* 211 N.C. 564, 191 S.E. 7; an airport, *Rhodes v. Asheville,* 230 N.C. 134, 52 S.E. 2d 371; streets, *Hunt v. High Point,* 226 N.C. 74, 36 S.E. 2d 694; a water and light plant, *Munick v. Durham,* 181 N.C. 188, 106 S.E. 665; wharves, *Henderson v. Wilmington,* 191 N.C. 269, 132 S.E. 25, etc., that municipalities may be properly held liable for acts of negligence committed by its agents and employees in the operation and maintenance of its parks and playgrounds.

A municipality may in certain instances be liable in *tort* even though it be engaged in a governmental function as well as when it is engaged in a proprietary function, although such governmental function is for a public purpose and may be maintained as a necessary governmental expense.

The construction and maintenance of streets by a municipality is a governmental and not a proprietary function; but since the decision in *Bunch v. Edenton,* 90 N.C. 431 (1884), it has been uniformly held in this jurisdiction that municipalities may be held liable in *tort* for failure to maintain their streets in a reasonably safe condition, and they are now required by statute to do so. G.S. 160-54; *Hamilton v. Rocky Mount,* 199 N.C. 504, 154 S.E. 844; *Speas v. Greensboro,* 204 N.C. 239, 167 S.E. 807; *Whitacre v. Charlotte,* 216 N.C. 687, 6 S.E. 2d 558, 126 A.L.R. 438; *Hunt v. High Point, supra.*

A city may establish and maintain a water plant and operate such plant in its governmental capacity in so far as it uses the water for extinguishing fires, washing streets and the like, *Klassette v. Drug Co.,* 227 N.C. 353, 42 S.E. 2d 411, but it operates such plant in its proprietary capacity when it sells water to its citizens. Even so, the expenditure of money derived from taxes for the construction and maintenance of such plants is held to be for a public purpose and a necessary governmental expense. *Fawcett v. Mt. Airy,* 134 N.C. 125, 45 S.E. 1029. Likewise, a municipal light plant is held to be a necessary expense and may be constructed without a vote of the people. *Fawcett v. Mt. Airy, supra.* A municipality is held to be acting in its governmental capacity in distributing electric current for lighting its streets, *Baker v. Lumberton,* 239 N.C. 401, 79 S.E. 2d 886, and in the operation and maintenance of its traffic signals, *Hodges v. Charlotte,* 214 N.C. 737, 200 S.E. 889. However, a municipality acts in its proprietary capacity when it establishes an electric distribution system and sells electric current for profit. *Rice v. Lumberton,* 235 N.C. 227, 69 S.E. 2d 543.

Our Court, in *Purser v. Ledbetter,* 227 N.C. 1, 40 S.E. 2d 702, speaking through *Seawell, J.,* said: "The Constitution plainly lays upon all agencies concerned with administration, including the courts, the duty to put first things first; not to lose perspective in spending tax money, which is said to be the lifeblood of government. So long as our conception of municipal power is such as to permit those who fight the battles of industry in crowded cities to be regarded as dispensable, and the casualties of accident and disease, directly caused or greatly augmented by congested living, as of no direct concern of municipal government, it is difficult to see how playgrounds and recreational facilities can be regarded as a necessary municipal expense.

"Independently of any question as to the degree of social necessity, we believe that the activities proposed, however qualifying as a public

purpose for which the municipality may provide by approval of the people, are too remote from the governmental function to be classed as objects of necessary public expense."

I do not consider the incidental charges made for the use of the facilities at Pullen and Chavis Parks to be determinative on the question of governmental immunity. The total receipts from these sources amounted to only $22,648.99 for the fiscal year ending 30 June 1953, in comparison with the over-all cost of $158,247.95 to operate and maintain all the parks in Raleigh, including its recreational program, for that period. The profit 'motive it would seem could not have been a substantial factor in the operation and maintenance of the defendant's parks or in the maintenance of its recreational program.

Ordinarily, when a city engaged in a business for profit it is one that will not only pay the expenses in connection with its operation, but will earn substantial income that will go into its treasury for the benefit of all its citizens and taxpayers. In the instant case, the income from Pullen Park, during the period under consideration, lacked $6,593.87 of being sufficient to operate and maintain that particular park. Anno.—Parks—Liability of Municipality, 99 A.L.R. 694, *et seq.*

In light of the decisions I have cited, and in view of the fact that the trend in this country is to limit rather than to extend the doctrine of governmental immunity, Municipal Corporation Law by Antieau, Volume 2, section 11.11, page 34; McQuillin's Municipal Corporations, 3rd Edition, Volume 18, section 53.112, page 453, *et seq.; Augustine v. Town of Brant,* 249 N.Y. 198, 163 N.E. 732, I am constrained to support the rule to the effect that municipalities are liable for express acts of negligence of their agents and employees in the operation and maintenance of municipal parks and playgrounds, when such negligence is the proximate cause of injury or damage. This view is supported by many authorities. See 63 C.J.S., Municipal Corporations, section 907(b), page 314; Anno.:—Parks—Liability of Municipality, 142 A.L.R. 1350; McQuillin's Municipal Corporations, 3rd Edition, Volume 18, section 53.112, page 445, *et seq.,* and cases therein cited.

I believe, however, it would be wise and proper for the General Assembly to limit recovery for injuries sustained in a municipal park or playground to those injuries proximately caused by the negligent acts of the city's employees, and also to put a reasonable limit on the amount recoverable in such actions. *Flynn v. Highway Commission,* 244 N.C. 617, 94 S.E. 2d 571.