JOSEPH C. GLENN, BY HIS NEXT FRIEND, MRS. NORA G. GLENN, v. THE CITY OF RALEIGH, NORTH CAROLINA, A MUNICIPAL CORPORATION.

(Filed 21 May, 1958.)

**1. Appeal and Error § 60—**

　　A decision on a former appeal constitutes the law of the case in respect to the questions therein presented and decided, both in subsequent proceedings in the trial court and on subsequent appeal upon substantially the same evidence.

**2. Municipal Corporations § 12—**

　　Where a city receives a net income in a substantial amount from the operation of one of its parks maintained as a part of its recreational and amusement program, the fact that its overall budget .requirements for its entire recreational programs shows a deficit does not alter the fact that the operation of the park imports a pecuniary advantage to the city so as to exclude the application of governmental immunity in its operation.

**3. Same—**

　　Where part of a municipal park is used for revenue-producing concessions and attractions, the fact that another part of the park contains a picnic-recreational area opened to the public free of charge, does not affect the doctrine of governmental immunity, and a person injured in the picnic area through the negligence of a municipal employee while acting in the discharge of his duties is not precluded from recovery by the governmental immunity doctrine, it being inferable from the record that the picnicking facilities of the park were substantial factors in drawing patrons for the revenue-producing concessions and that the several areas of the park were merely parts of a composite whole.

**4. Trial § 21½—**

　　Where defendant introduces no evidence and does not move for nonsuit until after argument to the jury has begun, the failure of the court, in the exercise of its discretion, to treat the motion as having been aptly made renders the motion ineffective.

**5. Municipal Corporations § 12—**

　　Where all of the evidence on the question of governmental immunity raises but the single inference that the doctrine is inapplicable to the facts, the court may instruct the jury to find in support of such inference if the evidence is found to be true.

**6. Appeal and Error § 39—**

　　The burden is on appellant to make it appear not only that the ruling complained of is erroneous, but also that the error is material and prejudicial.

APPEAL by defendant from *Phillips, J.,* and a jury, at 2 September Civil Term, 1957, of WAKE.

Civil action in tort by the plaintiff to recover damages for personal injuries alleged to have been sustained by him at Pullen Park in the

City of Raleigh as the result of being struck by a rock thrown by a power grass mower of the rotary type.

The plaintiff was injured on the afternoon of 14 May, 1953. He and a group of his high school friends had gone to Pullen Park, a public park maintained by the City of Raleigh, to have a picnic supper. The plaintiff was sitting on a picnic table when hit on the head by the rock. The power mower was cutting grass about 50 or 60 feet from where the plaintiff was sitting. It was being operated by an employee of the City. The rock weighed about 6½ ounces. The plaintiff's skull was fractured and he was seriously, painfully, and permanently injured by the blow.

It was stipulated and admitted by the defendant that the mower was owned by the City of Raleigh and was being operated by Walter Lucas in the scope and course of his employment by the City.

Issues were submitted to and answered by the jury as follows:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the Complaint. Answer: YES.

"2. What amount of damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $25,000.00."

From judgment on the verdict the defendant appeals.

*Paul F. Smith for defendant, appellant.*
*Douglass & McMillan for plaintiff, appellee.*

JOHNSON, J. This case was here at the Spring Term, 1957, on defendant's appeal from a verdict and judgment in favor of the plaintiff. The decision, upholding the ruling of the lower court in denying the defendant's motion for judgment of nonsuit but granting a new trial for errors committed by the trial court in charging the jury, is reported in 246 N.C. 469, 98 S.E. 2d 913.

The chief contention urged on this appeal, as on the former one, is that the City of Raleigh is immune from liability to the plaintiff under application of the doctrine of governmental immunity. The decision on former appeal resolved this question against the City. This being so, its contention now made must be viewed in the light of the rule that a decision of this Court on former appeal constitutes the law of the case in respect to the questions therein presented and decided, both in subsequent proceedings in the trial court and on subsequent appeal upon substantially the same evidence. *Maddox v. Brown,* 233 N.C. 519, 64 S.E. 2d 864; *Hayes v. Wilmington,* 243 N.C. 525, 91 S.E. 2d 673. On former appeal the Court's decision as to the question of governmental immunity is stated in crucial part by *Parker, J.,* as follows:

"Considering plaintiff's evidence in the light most favorable to him, and disregarding defendant's evidence which tends to establish another and a different state of facts, or which tends to impeach or contradict his evidence, which we are required to do on motion for judgment of nonsuit (*Atkins v. Transportation Co.*, 224 N.C. 688, 32 S.E. 2d 209; *Singletary v. Nixon*, 239 N.C. 634, 80 S.E. 2d 676), it is our opinion that the net revenue of $18,531.14 for the fiscal year 1 July 1952 to 30 June 1953 received by the city of Raleigh from the operation of Pullen Park for that period, which was used by the city for the capital maintenance of the park area, building items, paying salaries, buying fuel, etc., (the evidence that the $18,531.14 was spent in the amusement area only is the defendant's evidence), was such as to remove it, for the purposes of the consideration of a motion for judgment of nonsuit, from the category of incidental income, and to import such a corporate benefit or pecuniary profit or pecuniary advantage to the City of Raleigh as to exclude the application of governmental immunity. The required inferences from plaintiff's evidence as set forth in the Record are sufficient to protect him from a nonsuit on this ground."

The crucial evidence on which the defendant was denied governmental immunity on former trial and appeal was the testimony of City Manager Carper to the effect that for the fiscal year 1952-1953 the City of Raleigh collected *net revenue* of $18,531.14 from its operation of Pullen Park, As to this, Carper's testimony was the same on retrial. In fact, the evidence bearing on both the question of governmental immunity and the issue of actionable negligence was essentially the same at both trials. This is conceded by the defendant in its brief by this statement: "Factually, the evidence in the second trial does not materially differ from the evidence at the first trial. For that reason the defendant will not contend in this appeal, if the Court's rulings on the admission and exclusion of testimony were correct, that there was insufficient evidence of negligence on the part of the defendant's servant. It will contend that there was an improper admission and exclusion of evidence; that the Judge's charge was not in conformity with law; and that the defendant was not liable for the negligence of its servant in the operation of any part of Pullen Park, but in any event, that it was not liable for the negligence of its servant in an area of the Park for which no charge was made for use by the public."

The defendant makes a two-fold argument in urging that the former decision leaves open the question of governmental immunity.

First, the defendant points to the fact that the record on former appeal discloses that whereas City Manager Carper's testimony as to *net revenue* of $18,531.14 was heard by the jury, his further testimony as to the overall costs of operating the City's entire recreation program

and all its park facilities was given in the absence of the jury. The record on former appeal discloses that Mr. Carper (witness for the plaintiff) testified on cross-examination, in the absence of the jury, that the City spent $90,024.95 on maintenance of all parks and $68,-223.00 for its entire recreation program. On retrial, Carper's testimony as to the foregoing items of expense was received in evidence in the presence of the jury without objection. However, since these items were excluded from jury consideration on the first trial, the defendant assumes that the law of the case respecting the question of governmental immunity was established by the former decision solely on the basis of consideration of the factor of net revenue derived by the City from Pullen Park, with no consideration being given to the factor of overall costs of operating the City's recreation and park programs. Since the evidence of this latter factor of costs was before both the Judge and the jury on retrial, the defendant now contends that both factors should be considered together, and that when the item of net revenue from Pullen Park is considered in relation to the overall costs of operating the City's recreation and park programs, the question whether the doctrine of governmental immunity applies in this case is cast in a different light than on the former appeal. The defendant insists that when due consideration is given the factor of overall costs amounting to some $158,243.95, the item of $18,531.14 net revenue from Pullen Park constitutes only "incidental income," insufficient in amount to exclude application of the doctrine of governmental immunity, within the meaning of the rule stated by the Court on former appeal.

In considering the foregoing contention of the defendant we take note of these facts disclosed by the evidence: Pullen Park embraces an area of about 42 acres. On one side of the Park is an area of about three acres where revenue-producing concessions and amusements are located, among which are the swimming pool, the merry-go-round, a small train which takes passengers around a loop, and concession stands where food and drinks are sold. City Manager Carper testified that "The gross receipts from these four operations for the year July 1, 1952 to June 30, 1953, were . . . $42,640.94. The net return on these operations for that period, . . . was $20,765.55." The rest of the Park is devoted for the most part to use-free public recreation facilities, such as ball fields, playgrounds, parking areas, picnic areas with tables, fireplaces and shelters for picnicking. There is also a lake in the Park.

We conclude that the item of $18,531.14 received as net revenue from the Park, when considered in connection with the overall budget requirements for the operation of the City's entire amusement and recreation programs, constitutes receipts over and beyond "incidental income," and "imports such a corporate benefit or pecuniary profit or pecuniary advantage to the City of Raleigh as to exclude the applica-

tion of governmental immunity," within the meaning of the decision on former appeal. The court below correctly so ruled.

Next, the defendant contends that even if it be held that the City's immunity from tort liability is lost by reason of the large amount of net revenue derived from the Park, even so, the lost immunity should be restricted to the three-acre amusement area where the revenue was produced, with the doctrine of governmental immunity continuing to apply in the picnic-recreation area which was open to the public free of charge. The contention is untenable. On this record it is inferable that the picnicking facilities of the Park were substantial factors in drawing patrons into the Park and that the picnickers furnished substantial patronage for the revenue-producing concessions and attractions in the amusement area of the park. The use of the picnic and amusement areas by the patrons of the Park is so interrelated that these areas may not be treated separately in applying the doctrine of governmental immunity. It would be an unnatural application of this doctrine to say that there is no governmental immunity at the swimming pool or at the merry-go-round or at the train or at the concession stands, but that immunity does apply with all its rigor in the surrounding picnic area and at the table where the plaintiff was injured. The trial court properly treated the several areas of the Park as a composite whole in determining the question of governmental immunity.

It is noteworthy to observe that on retrial the defendant presented its defense of governmental immunity in a different procedural manner than on former trial. At the first trial, the defense of governmental immunity was raised by motion for judgment as of nonsuit. On retrial, the defendant was permitted to amend its answer and plead governmental immunity by way of further defense. At the close of the plaintiff's evidence, the defendant did not move for judgment of nonsuit. Its counsel announced that the defendant would offer no evidence, and did not move for nonsuit. The case proceeded and counsel for the plaintiff made one argument to the jury, the first of two arguments for the plaintiff. Whereupon the jury was excused on request of counsel for the defendant. Counsel then moved "for judgment of nonsuit for the record at the close of all the evidence in the case," requesting the court in the exercise of its discretion to treat the motion as having been made seasonably at the close of the evidence. Plaintiff objected. Whereupon the court denied the motion. Counsel for defendant then addressed this inquiry to the court: ". . . your Honor: I was wondering whether or not that, as I understand now, the Court is actually passing on the motion for judgment of nonsuit, and not doing it on the grounds of when it was made." The court replied: "I am passing on the motion as now made." Defense counsel then re-

quested the presiding Judge to rule as a matter of law on its plea of governmental immunity. The Judge intimated that such ruling was unnecessary since he intended to give the jury a peremptory instruction on the question of governmental immunity. However, on further request of defense counsel, the Judge ruled as a matter of law, in the absence of the jury, that upon the evidence adduced the City is not immune from liability under the doctrine of governmental immunity, and later, in his charge to the jury, the presiding Judge gave a peremptory instruction in favor of the plaintiff on the question of governmental immunity.

Since the trial court did not, in the exercise of its discretion, treat the defendant's motion for nonsuit as having been made at the close of the evidence, the defendant's motion later made did not serve to raise the question of governmental immunity. G.S. 1-183. See also *Bruton v. Light Co.*, 217 N.C. 1, 6 S.E. 2d 822. Cf. *Temple v. Temple*, 246 N.C. 334, 98 S.E. 2d 314. However, no harm came to the defendant from the delay in moving for nonsuit. This is so because the defendant's plea of governmental immunity was adequately ruled upon by the trial Judge, both in his direct ruling in the absence of the jury in response to the defendant's request for such ruling, and also in his peremptory instruction to the jury. We find no prejudicial error either in the foregoing ruling of the court or in the peremptory instruction. Ordinarily, where, as here, on the question of governmental immunity, all the evidence points in the same direction, with but one inference to be drawn from it, an instruction to find in support of such inference, if the evidence is found to be true, will be upheld. See *Commercial Solvents v. Johnson*, 235 N.C. 237, 69 S.E. 2d 716. The defendant's exceptions to the trial court's ruling and to his peremptory instruction on the question of governmental immunity are overruled.

While the assignments of error chiefly urged on this appeal relate to rulings on the question of governmental immunity, the defendant has brought forward in its brief numerous other assignments relating to rulings on the admission and exclusion of evidence and to the court's instructions given the jury. These assignments have been examined with care. They present no new question requiring discussion. We find in them no error of sufficient moment to justify a new trial. Verdicts and judgments are not to be set aside for mere error and no more. To accomplish this result it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial and that a different result likely would have ensued, with the burden being on the appellant to show this. *S. v. Rainey*, 236 N.C. 738, 74 S.E. 2d 39; *Call v. Stroud*, 232 N.C. 478, 61 S.E. 2d 342; *Wilson v. Lumber Co.*, 186 N.C. 56, 118 S.E. 797.

Prejudicial error has not been made to appear. The verdict and judgment will be upheld.

No Error.