DAVID L. STONE, ADMINISTRATOR OF THE ESTATE OF BRUCE CHARLES
    CLAYTON, DECEASED v. THE CITY OF FAYETTEVILLE

No. 6812SC436

(Filed 18 December 1968)

1. Municipal Corporations § 12— tort liability — governmental func-
   tion

   In the absence of statutory provision, there can be no recovery against
   a municipal corporation for injuries occasioned by its negligence or non-
   feasance in the exercise of functions essentially governmental in character.

2. Municipal Corporations § 5— governmental v. proprietary functions

   Any activity of a municipality which is discretionary, political, legis-
   lative or public in nature and performed for the public good in behalf of
   the State rather than for itself is a governmental function; any mu-
   nicipal activity which is commercial or chiefly for the private advantage
   of the compact community is private or proprietary.

3. Municipal Corporations § 20— operation of storm drainage system
   — governmental function

   A municipality exercises a governmental function in operating and
   maintaining a public storm drainage system and is immune from civil lia-
   bility for personal injury or death resulting therefrom.

ON *certiorari* by defendant, City of Fayetteville, from *Braswell,
J.,* at the 9 September 1968 Civil Session of CUMBERLAND Superior
Court.

The allegations of plaintiff's complaint, filed 11 November 1964,
are summarized as follows:

Plaintiff is the duly appointed administrator of Bruce Charles
Clayton who was two years and ten months old at the time of his
death on 25 September 1962. Sometime prior to said date, a storm
drain was constructed under the supervision of and pursuant to
plans and specifications approved by defendant City, to serve all
or a portion of the Bordeaux section of Fayetteville. The storm drain
pipe was 54 inches in diameter, extended several thousand feet, and
terminated on a lot in the city near the Mary McArthur School. At
its terminus, the drain pipe was incased in a concrete wall and was
raised above a ditch or slight ravine into which it emptied. The drain
extended through various sections of the Bordeaux area of Fayette-
ville and drained certain streets as well as other sections. Defend-
ant City was solely responsible for the maintenance and control of
the drain. At the terminus of the drain, the water flowing from it
caused a hole to form in the ditch below the terminus, allowing
water to pond for a depth of more than 3.5 feet. This condition ex-
isted with the full knowledge of the defendant's employees for sev-

eral months prior to intestate's death, and to the knowledge of defendant's employees several children had gotten into the water-filled hole. On 25 September 1962, plaintiff's intestate, while playing with other small children in the vicinity of the hole, fell into the water and was drowned.

Plaintiff alleged that the death of his intestate was proximately caused by the negligence of defendant. Defendant demurred to the complaint, contending that the complaint does not state facts sufficient to constitute a cause of action against defendant for that it appears upon the face of the complaint that defendant is a municipal corporation and that the alleged tort arose in connection with defendant's storm sewer drainage system, a governmental function for which defendant has no civil liability for personal injury or death.

Following a hearing, the demurrer was overruled and defendant petitioned this court for *certiorari* which was allowed.

*Anderson, Nimocks & Broadfoot by Henry L. Anderson for plaintiff appellee.*

*Tally, Tally & Lewis by J. A. Bouknight, Jr., for defendant appellant.*

BRITT, J.

[3] Was the defendant, in the maintenance of the storm drain described in plaintiff's complaint, exercising a governmental function from which it enjoyed immunity from tort action for wrongful death? We answer in the affirmative.

[1] A municipal corporation has a dual nature or capacity, one public and the other private, and exercises correspondingly twofold functions and duties. In determining the liability of a municipal corporation for tort under any particular circumstance, the courts very generally recognize that a distinction exists between the acts and duties which are strictly public and governmental in their nature and those which are of a private or proprietary nature. The rule almost universally recognized is that in the absence of statutory provision, there can be no recovery against a municipal corporation for injuries occasioned by its negligence or nonfeasance in the exercise of functions essentially governmental in character. In the exercise of such functions, the municipal corporation is acting for the general public as well as the inhabitants of its territory, and represents in such capacity and sovereignty of the state. 38 Am. Jur., Municipal Corporations, § 572, p. 261. This principle was declared

by our Supreme Court in the case of *Metz v. Asheville,* 150 N.C. 748, 64 S.E. 881, as follows: "* * * When cities are acting in their corporate capacity or in the exercise of powers for their own advantage, they are liable for damages caused by the negligence or torts of their officers or agents; but where they are exercising the judicial, discretionary or legislative authority conferred by their charters, or are discharging the duty imposed solely for the public benefit, they are not liable for the torts or negligence of their officers, unless there is some statute which subjects them to liability therefor." (Authorities cited).

In *Metz v. Asheville, supra,* the basis for the suit was the sewerage system maintained by the City of Asheville. In affirming judgment of the superior court in favor of defendant City, the Supreme Court said: "* * * The theory upon which municipalities are exempted from liability in cases like this is, that in establishing a free sewerage system for the public benefit it is exercising its police powers for the public good and is discharging a governmental function and, as expressed by the Supreme Court of Illinois, 'It is a familiar rule of law, supported by a long line of well-considered cases, that a city in the performance of its police regulations can not commit a wrong through its officers in such a way as to render it liable for a tort.' *Craig v. Charleston,* 180 Ill., 154; * * *."

[2] In numerous cases involving municipalities and the question of governmental immunity, our Supreme Court has pointed out the difference between governmental acts and proprietary acts. In *Carter v. Greensboro,* 249 N.C. 328, 106 S.E. 2d 564, in an opinion by Higgins, J., it is said:

> "Whether specific acts of a city are governmental or proprietary has been the subject of many of this Court's decisions. *Glenn v. Raleigh,* 248 N.C. 378, 103 S.E. 2d 482; *Glenn v. Raleigh,* 246 N.C. 469, 98 S.E. 2d 913; *Rhodes v. Asheville,* 230 N.C. 134, 52 S.E. 2d 371; *Klassette v. Drug Co.,* 227 N.C. 353, 42 S.E. 2d 411; *Hunt v. High Point,* 226 N.C. 74, 36 S.E. 2d 694; *Millar v. Wilson,* 222 N.C. 340, 23 S.E. 2d 42; *Broome v. Charlotte,* 208 N.C. 729, 182 S.E. 325; *Parks-Belk Co. v. Concord,* 194 N.C. 134, 138 S.E. 599; *Henderson v. Wilmington,* 191 N.C. 269, 132 S.E. 25. 'Any activity of the municipality which is discretionary, political, legislative, or public in nature and performed for the public good in behalf of the State rather than for itself, comes within the class of governmental functions. When, however, the activity is commercial or chiefly for the private ad-

vantage of the compact community, it is private or proprietary.' *Britt v. Wilmington,* 236 N.C. 446, 73 S.E. 2d 289. * * *"

In the case before us, the portion of the large storm drain which caused the hole or gully in which plaintiff's intestate was drowned was located some distance from a public street, therefore, defendant's liability cannot be determined by the rule of law pertaining to public streets or bridges or drains used solely in connection with streets. Here we are confronted with a 54-inch storm drain or sewer serving an entire area of the City of Fayetteville.

Defendant strongly relies on *Williams v. Greenville,* 130 N.C. 93, 40 S.E. 977. That case involved an open ditch which defendant City had constructed from higher land which went through a lot adjacent to plaintiff's lot and on into a street below plaintiff's lot. Apparently the ditch was used for drainage and to convey sewerage. Plaintiff contended that defendant allowed the ditch to become the depository of dead fowl and animals until it produced a disagreeable and unhealthy condition, resulting in water overflowing from the ditch onto plaintiff's lot and causing the sickness and death of two of plaintiff's children. In the opinion we find the following:

"* * * In actions for damage against a municipal corporation, where the act complained of was done in pursuance of its legislative or judicial powers, or in the exercise of its authorized police powers, the doctrine of *respondeat superior* does not apply, except as to property rights. And such defendant is only liable for injuries caused by neglect to perform some *positive duty* devolved upon it by reason of the incorporation, such as keeping the public streets in repair, or damage to property, or when it receives a pecuniary benefit from it. The reason for this distinction, that it is liable for damage, seems to lie in the fact of ownership — vested rights, which no one has the right to invade, not even the Government, unless it be for public purposes, and then only by paying the owner for it. This right to take property does not fall under the doctrine of police power, and the doctrine of *respondeat superior* applies."

Thus it appears that while our Supreme Court recognizes the right of recovery against a municipal corporation for property damage on the theory that one whose property is appropriated for public purposes is entitled to just compensation therefor, it recognizes immunity of a municipal corporation from liability for personal injury or death arising from the maintenance of a ditch used for drainage and sewerage.

In *Glenn v. Raleigh*, 246 N.C. 469, 98 S.E. 2d 913, plaintiff, a resident of defendant municipality, allegedly was injured by the negligence of an employee of the city while an invitee in a municipal park; specifically, plaintiff was injured when struck on his head with a rock thrown from a rotary blade mower. In an opinion by Parker, J. (now C.J.), our Supreme Court quoted with approval from *Bolster v. Lawrence*, 225 Mass. 387, 114 N.E. 722, as follows: "The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability, if it is not, there may be liability." Our Supreme Court concluded that the receipt of net revenue from the park which plaintiff was visiting and during the year in question was sufficient to "import such a corporate benefit or pecuniary profit or pecuniary advantage to the City of Raleigh as to exclude the application of governmental immunity."

In the case before us, the City of Fayetteville received no fees or remuneration of any kind for the storm drain in question. Furthermore, in *James v. Charlotte*, 183 N.C. 630, 112 S.E. 423, our Supreme Court held that the defendant City in that case enjoyed governmental immunity from a tort committed by an employee of its Sanitation Department although the city made charges to its citizens covering the actual expense of removing garbage.

[3] *Metz v. Asheville, supra,* clearly established governmental immunity for North Carolina municipal corporations from wrongful death actions arising from the operation of a public sewerage system. *Williams v. Greenville, supra,* appears to establish the principle for a facility maintained by a city for sewerage and drainage. *James v. Charlotte, supra,* applies the doctrine to a sanitation department maintained by a city. We see no reason why the drainage facility described in plaintiff's complaint should not fall within the same category of governmental services.

The judgment of the superior court overruling defendant's demurrer is

Reversed.

BROCK and PARKER, JJ., concur.