JANE RICH; AND VICKY KIM RICH, BY HER GUARDIAN AD LITEM, GEORGE F. TAYLOR v. CITY OF GOLDSBORO

No. 728SC493

(Filed 2 August 1972)

**Municipal Corporations § 18— injury in public park — municipal immunity — no relief from liability as a matter of law**

The trial court erred in entering summary judgment dismissing plaintiffs' action against defendant city for injuries arising out of the negligent maintenance of playground equipment in one of the city's public parks, because the doctrine of municipal immunity from tort claims, though not completely abolished, is so restricted in its application that the city's operation of a park in the exercise of governmental function does not, as a matter of law, relieve the city from a duty to exercise reasonable care to provide reasonably safe facilities.

APPEAL by plaintiffs from *Cowper, Judge,* 9 February 1972 Session of Superior Court held in WAYNE County.

Action to recover damages allegedly resulting from the negligent maintenance of a defective see-saw in a city park operated by defendant. Defendant's motion for summary judgment was allowed.

*Sasser, Duke and Brown by John E. Duke, J. Thomas Brown, Jr., and Herbert B. Hulse for plaintiff appellant.*

*Taylor, Allen, Warren & Kerr by John H. Kerr III for defendant appellee.*

VAUGHN, Judge.

The sole question presented is whether suit lies against the City of Goldsboro for injuries arising out of the negligent maintenance of playground equipment in one of the city's public parks. We hold that the suit may be maintained and that it was error to enter summary judgment dismissing plaintiffs' action. *White v. Charlotte,* 211 N.C. 186, 189 S.E. 492; *Glenn v. Raleigh,* 246 N.C. 469, 98 S.E. 2d 913; *Glenn v. Raleigh,* 248 N.C. 378, 103 S.E. 2d 482.

In *White* the court said "Conceding that Independence Park and its facilities, including the swing from which plaintiff's intestate fell or was thrown . . . are owned, controlled, and operated by the defendants in the exercise of a governmental function, and not for a corporate purpose . . . it does

not follow as a matter of law that defendants owed no duty to plaintiff's intestate and others who had the right to use said facilities for purposes of play or recreation, to exercise reasonable care to provide facilities which were reasonably safe, or that defendants would not be liable to plaintiff for a breach of such duty, if such breach was the proximate cause of injuries which resulted in death of his intestate. . . ."

In the *Glenn* opinions recovery was allowed against the city for damages arising out of the negligent maintenance of one of its public parks. There, as in the case at bar, the city received a small fraction of the total cost of operating its public park system by charging fees for the use of some but not all of its facilities. The opinion seems to hold that the collection of fees results in a pecuniary advantage to the city and thereby removes the shield of governmental immunity. Justice Denny (later Chief Justice), in a concurring opinion, rejected the notion that the incidental charges made for the use of the park facilities were determinative on the question of governmental immunity and was of the opinion that cities should be held liable for negligence in the operation of public parks, just as they had previously been held liable for negligence in the construction of a golf course, a water and light plant, and public streets.

For an interesting review of the development and general demise of the concept of municipal immunity from tort claims, see *Holytz v. City of Milwaukee,* 17 Wisconsin 2d 26, 115 N.W. 2d 618 (1962). In that opinion, the court, speaking through Justice Gordon says:

> "There are probably few tenets of American jurisprudence which have been so unanimously berated as the governmental immunity doctrine. This court and the highest courts of numerous other states have been unusually articulate in castigating the existing rule; text writers and law reviews have joined the chorus of denunciators."

The court then sets out examples of the condemnation of the doctrine by numerous courts and writers. We generally subscribe to the views so expressed. In a concurring opinion, Justice Currie advances the interesting view that legislative action defeating a proposed change of a court-made rule is not a per se expression of legislative acquiescence in the rule. To the contrary, suggests Justice Currie, it may be that the

Rich v. City of Goldsboro

legislators voted as they did because, inasmuch as the rule sought to be abrogated had been originally created by the court, they deferred to the supposed wisdom of the court, or else determined that the court should correct its own mistakes.

Though declining to abolish the doctrine, our Supreme Court has conceded that "[i]t may well be that the logic of the doctrine of sovereign immunity is unsound. . ." *Steelman v. City of New Bern*, 279 N.C. 589, 184 S.E. 2d 239.

With respect to municipal corporations, our court has specifically recognized merit in the modern tendency to restrict rather than to extend the application of governmental immunity:

> "We again decline to abrogate the firmly embedded rule of governmental immunity. However, we recognize merit in the modern tendency to restrict rather than to extend the application of governmental immunity. This trend is based, *inter alia,* on the large expansion of municipal activities, the availability of liability insurance, and the plain injustice of denying relief to an individual injured by the wrongdoing of a municipality. A corollary to the tendency of modern authorities to restrict rather than to extend the application of governmental immunity is the rule that in cases of doubtful liability application of the rule should be resolved against the municipality." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897.

In *Koontz,* the City of Winston-Salem was not allowed to avail itself of governmental immunity as a defense in an action alleging negligence in the maintenance of a land fill for garbage disposal.

In keeping with what we believe to be the meaning of these and other decisions of the North Carolina Supreme Court, the judgment from which plaintiff appealed is reversed.

Reversed.

Judges PARKER and GRAHAM concur.